UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FRANK SHERMAN,

    Petitioner,

v.                                            CASE NO. 6:06-cv-885-Orl-31DAB

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 7). Petitioner filed a reply to the response (Doc. No. 11).

Petitioner alleges four claims for relief in his habeas petition: (1) the State's failure to file a sworn petition for involuntary civil commitment pursuant to the Jimmy Ryce Act[1] violated his due process rights pursuant to the Fourth and Fifth Amendments to the United States Constitution; (2) the state trial court erred by denying Petitioner's motion for specific performance of the plea agreement and/or petition for writ of prohibition, quo

---

[1] *See* §§ 394.910, *et seq.*, Fla. Stat.

warranto/or other just relief; (3) the state trial court erred by denying Petitioner's motion for a modified jury instruction on the issue of volitional control; and (4) the state trial court erred by denying Petitioner's motion for directed verdict.

## I.     Procedural History

On October 21, 1998, Petitioner entered a plea of nolo contendere to aggravated stalking of a minor (count one), attempted interference with custody (count two), and battery (count three). The state trial court sentenced Petitioner to concurrent thirty-one month terms of imprisonment for counts one and two and to a concurrent 209-day term of imprisonment for count three with a credit of 209 days for time served.

On June 20, 2000, five days before Petitioner's scheduled release from prison, the State filed an unsworn petition for involuntary civil commitment seeking to commit Petitioner as a sexually violent predator pursuant to the Jimmy Ryce Act. (App. A at 1-2.) On June 22, 2000, the state trial court entered an *ex parte* order determining that probable cause existed to civilly commit Petitioner. *Id.* at 30-31. On June 25, 2000, Petitioner's scheduled release date, he was taken into custody by the Department of Corrections/Department of Children and Families to await further proceedings. *Id.* Petitioner appeared before the state trial court on June 29, 2000, for a determination of appointment of counsel. *Id.* at 38. At that time, the trial court appointed counsel and set a date for a probable cause hearing. *Id.* On July 5, 2000, an adversarial probable cause hearing was conducted, and the state trial court affirmed its *ex parte* finding of probable cause. *Id.* at 39.

On October 25 and 26, 2004, a jury trial was conducted, and the jury unanimously found Petitioner to be a sexually violent predator. *Id.* at 347-48. The state trial court ordered Petitioner to be civilly committed until such time as his "mental abnormality or personality disorder has so changed that it is safe for [him] to be at large." *Id.* at 348.

Petitioner appealed the final judgment of commitment. On January 24, 2006, the Fifth District Court of Appeal of Florida *per curiam* affirmed, citing *Golden v. State*, 913 So. 2d 744 (Fla. 5th DCA 2005). (App. E.) Petitioner filed a motion for rehearing (App. F), which was denied on February 22, 2006. (App. G.) Petitioner filed a petition for review of the Fifth District Court of Appeal's decision with the Supreme Court of Florida, which denied the petition for lack of jurisdiction on March 27, 2006. (App. J.)

II.   *Analysis*

   A.   *Claim One*

Petitioner asserts that the State's failure to file a sworn petition for involuntary civil commitment violated his due process rights pursuant to the Fourth and Fifth Amendments[2] to the United States Constitution. In support of this claim, Petitioner contends that the state trial court entered an *ex parte* probable cause order based on an

---

[2]In claim one, Petitioner summarily asserts that the State's actions related to his probable cause determination violated his Fifth Amendment due process right. *See* Doc. No. 1 at 4-6; *see also* Doc. No. 2 at 1; Doc. No. 11 at 2, 6. Petitioner's sole allegation of a Fifth Amendment violation is based upon the State's failure to submit a sworn petition for voluntary commitment or to conduct a probable cause hearing within twenty-four hours after he was detained. Accordingly, this is the specific claim that the Court will consider.

unsworn petition. (Doc. No. 2 at 1-2.) Moreover, an adversarial probable cause hearing was not conducted until ten days after he was detained. *Id.* at 2. Petitioner maintains that the State's failure to determine probable cause based on sworn evidence until ten days after he was detained violated his due process rights.

Petitioner raised this claim on direct appeal. (App. B.) In support of the claim, Petitioner relied on *Kephart v. Regier*, Case Nos. SC02-936, SC02-2280, 2005 WL 673681 (Fla. March 24, 2005).[3] The Fifth District Court of Appeal *per curiam* affirmed Petitioner's civil commitment based on *Golden*. (App. E.)

In *Golden*, the state appellate court held that an inmate's due process rights were not violated, despite the State's failure to file a sworn petition for civil commitment, because the petition was filed more than a month before the inmate's scheduled release from prison, the inmate had notice of the commitment proceedings, and had an opportunity to seek an adversarial probable cause hearing, but failed to do so. *Golden*, 913 So. 2d at 748.

---

[3]Subsequent to the completion of Petitioner's state appellate proceedings, on June 8, 2006, *Kephart v. Regier* was withdrawn and substituted on rehearing with *Kephart v. Hadi*, 932 So. 2d 1086 (Fla. 2006). In *Hadi*, the Supreme Court of Florida held that in order to satisfy due process requirements, a probable cause petition for civil commitment filed pursuant to the Jimmy Ryce Act must be supported by sworn proof, and if the petition is not sworn, the state trial court must hold a probable cause hearing within twenty-four hours from the filing of the petition. *Id.* at 1093-94. The Court held, however, that the holding was prospective such that "the twenty-four hour requirement . . . [was] not applicable to those currently being held past their release date on the basis . . ." that their petitions for commitment were not sworn to by the prosecuting attorney. *Id.* The Court provided the State with a seven-day cure period in which to correct deficiencies in any pending cases. *Id.*

The state appellate court concluded that the inmate had waived his right to a probable cause determination. *Id.*

Petitioner asserts that his case is inapposite to *Golden* because he did not receive notice prior to his scheduled release of the State's decision to commence involuntary civil commitment proceedings against him or to detain him. *See* Doc. No. 11 at 5. Moreover, he contends that he moved for an adversarial probable cause hearing on June 29, 2000, and therefore, did not waive his right to a probable cause determination. *Id.* Thus, he asserts that he did not waive his due process rights and the adversarial probable cause hearing conducted ten days after his scheduled release did not satisfy the due process requirements as interpreted by the Supreme Court of Florida in *Kephart*. *Id.*

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

6

state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

In considering whether the due process rights of inmates had been violated, the United States Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 118-19 (1975), held that "the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial. . . ." The Court continued to state, however, that "illegal arrest or detention does not void a subsequent conviction." *Id.* at 119 (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Therefore, the Court determined that "although a suspect who is presently detained may challenge the probable cause for that confinement, *a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.*" *Id.* (emphasis added); *see also Stroble v. California,* 343 U.S. 181, 197 (1952) (stating "[w]hen this Court is asked to reverse a state court conviction as wanting in due process, illegal acts of state officials prior to trial are relevant only as they bear on petitioner's contention that he has been deprived of a fair trial, either through the use of a coerced confession or otherwise"); *Cain v. Boone*, 221 F.3d 1351 (10th Cir. 2000) (denying certificate of appealability on claim that the district court erred in § 2254 action in denying Fourth Amendment claim pursuant to *Gerstein* because "a conviction will not be vacated solely because the defendant was detained prior to trial

without a determination of probable cause"); *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (noting that "[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest"); *Byrd v. Jones*, Case No. 1:04-cv-785, 2008 WL 151243 (W.D. Mich. January 14, 2008) (denying due process claim raised pursuant to the Fifth and Fourteenth Amendments based on *Gerstein*).

In the instant case, it is undisputed that Petitioner was provided an adversarial probable cause hearing related to his involuntary civil commitment proceeding, albeit ten days after his underlying criminal sentences concluded. Thereafter, a jury trial was conducted wherein Petitioner was unanimously found to be a sexually violent predator. Because the State's failure to conduct a probable cause hearing does not require this Court to vacate Petitioner's civil confinement, the fact that the probable cause hearing was held ten days after Petitioner was detained is not a sufficient basis to grant habeas relief, given that a jury trial was subsequently conducted. *See, e.g., United States v. Causwell*, 10 Fed. Appx. 80, 86 (4th Cir. 2001) (concluding based on *Gerstein* that even if the defendant's detention was illegal, "'the manner in which a defendant is brought to trial does not affect the ability of the government to try him.'") (quoting *Matta-Ballesteros v. Henman*, 896 F.2d 255, 260 (7th Cir. 1990)); *see also United States v. Daniels*, 64 F.3d 311, 314 (7th Cir. 1995) (holding that "[a] failure to conduct a proper *Gerstein* hearing or even a refusal to conduct one does not invalidate an otherwise valid conviction"). As such, this Court concludes that Petitioner has failed to demonstrate that the state courts' decision is either contrary to, or

an unreasonable application of, clearly established federal law. Accordingly, this claim is denied pursuant to § 2254(d).

    *B.*    *Claims Two, Three, and Four*

In claims two, three, and four, Petitioner alleges that the state trial court erred by denying three motions. Respondents assert that these claims are procedurally barred because Petitioner did not raise them in his brief on direct appeal.

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>     (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B)    (i)    there is an absence of available State corrective process; or
>
>             (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from

considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained that

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id*.; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

In this case, the record indicates that Petitioner did not raise claims two, three, and four in his appellate brief on direct appeal.  *See* App. B.  "In Florida, as in other jurisdictions, the appellate rules and decisional law require that issues not presented and argued in an initial brief are deemed abandoned or waived, and will not be considered by the reviewing court."  *Day v. Crosby*, Case No. 8:04-cv-643-T-24MAP, 2005 WL 2043522, at *13 (M.D. Fla. August 25, 2005) (citing *Duest v. Dugger*, 555 So. 2d 849, 851-52 (Fla. 1990); *Bondu v. Gurvich*, 473 So. 2d 1307, 1313 n.1 (Fla. 3d DCA 1984); *Dep't of Health and Rehabilitative Services v. Petty-Eifert*, 443 So. 2d 266, 268 (Fla. 1st DCA 1983); *St. John's River Terminal Co., Inc. v. Vaden*, 190 So. 2d 40, 41 (Fla. 1st DCA 1966); Fla. R. App. P. 9.210(b)(5)); *see also Atkins v. Singletary*, 965 F.2d 952, 955 n.1 (11th Cir. 1992) (determining appellants abandoned claims not addressed on appeal); *Polyglycoat Corp. v. Hirsch Distribs., Inc.*, 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy.").  Petitioner concedes that claims two, three, and four were not raised on direct appeal, (Doc. No. 11 at 7), but he maintains that the two exceptions to the procedural bar doctrine apply.  *Id.*

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."

11

*Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

In support of the application of the two exceptions, Petitioner first summarily contends that this Court should consider claims two, three and four because failure to do so would result in a fundamental miscarriage of justice. (Doc. No. 11 at 7.) Petitioner then asserts that the cause and prejudice exception applies because his appellate counsel failed to pursue these claims on direct appeal and prejudice resulted based on his civil commitment. *Id*. at 7-8.

A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Petitioner has not demonstrated that he is actually innocent as required pursuant to the fundamental miscarriage of justice exception.

Furthermore, he has not demonstrated cause and prejudice to overcome his failure to exhaust.

A claim of ineffective assistance of counsel may support a finding of cause only if counsel's performance was "so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Before ineffective assistance of counsel may serve as cause for a procedural default, the petitioner must be able to satisfy the two elements of the *Strickland* analysis. *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002). Thus, if Petitioner "cannot prevail on a separate ineffective assistance of counsel claim, then he cannot prevail on an argument that ineffective assistance caused the procedural default." *Id.* In addition, the claim of ineffective assistance of counsel must have been "presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 489 (1986). A procedurally defaulted claim of ineffective assistance of counsel may not serve as cause to overcome the procedural bar of a separate claim, unless Petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance of counsel claim. *Edwards*, 529 U.S. at 453.

Petitioner's claim of ineffective assistance of appellate counsel is inadequate to constitute cause to overcome the procedural bar. Petitioner failed to raise any claim of ineffective assistance of appellate counsel in the state courts as a separate, independent claim. Moreover, Petitioner concedes that his appellate counsel did not raise these claims on direct appeal because "it would have been fruitless." *See* Doc. No. 11 at 7. Therefore,

Petitioner has not established cause or prejudice to overcome the procedural default, and claims two, three, and four are barred from consideration by this Court.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1, filed June 28, 2006) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court is directed to close this case and to enter judgment accordingly.

**DONE AND ORDERED** at Orlando, Florida, this 11th day of April, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sc 4/11
Counsel of Record
Frank Sherman